IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FLOYD OVERTURF,**
**#B87081,**

   **Plaintiff,**

vs.

               Case No. 17–cv–0762–DRH

**WEXFORD HEALTH SOURCES,**
**JANE DOE 1-2, and**
**JOHN DOE 1-3,**

   **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

  Plaintiff Floyd Overturf, an inmate in Shawnee Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred while he was incarcerated at Big Muddy River Correctional Center ("Big Muddy"). In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

  (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
  (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the

1

complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff has a prescription for Betamethasone ointment, which is a psoriasis medication. (Doc. 1, p. 5). The prescription for 135 GMs per month was prescribed by a Dr. Dennis and spanned October 6, 2016 to February 6, 2017. *Id.* On October 11, 2016, Plaintiff received 90 GMs. *Id.* On November 10, 2016, he received 45 GMs. *Id.* Plaintiff notified the nurse during the evening medication line that he only

received a small portion of his prescription. *Id.* She told him to turn his refill sticker in four to five days before it ran out, and the pharmacy would refill it. *Id.* On about November 15, 2016, Plaintiff turned his refill sticker in to the 11:00 pm nurse who collects refill stickers. *Id.* Plaintiff should have received more Betamethasone ointment on November 20, 2016. *Id.* From November 20, 2016 through November 29, 2016, Jane Doe #1, a Wexford Pharmacy Tech, repeatedly delayed and denied to provide Plaintiff with prescribed medications, eventually causing him pain and injury due to his psoriasis. (Doc. 1, pp. 8-9). On November 22, 2016, Plaintiff sent a request to Health Care notifying them that his medication was late. (Doc. 1, p. 5). He did not receive a response. *Id.*

On November 25, 2016, Plaintiff sent another request slip to Health Care "notifying them that his prescription was late and that his skin was getting bad." *Id.* He received no response. *Id.* "On Nov. 22, 2016 and November 25, 2016, Jane Doe #2 Wexford Health Care Coordinator . . . deliberately ignored [Plaintiff's] institutional request slips sent to her department alerting Wexford Health Care staff of the delay of [his] prescribed medication, and then also informing them of [his] discomfort from extreme itching and pain, and the risk to [his] health from open sores." (Doc. 1, p. 8).

On November 28, 2016 at 9:00am, Plaintiff spoke to his housing unit wing counselor, Ms. Allen. (Doc. 1, p. 5). He informed her of his medication issue. *Id.* He also told her that his "skin itched really bad." *Id.* "The plaqueing of [his] skin spots was really thick and start[ed] to crack and bleed." *Id.* After showing her

3

some of his inflamed skin spots, she made a note of his problem and said she would do what she could to help him address it. *Id.* On November 29, 2016, Plaintiff "was told to report to the A.M. nurse sick call line in [his] housing unit." (Doc. 1, pp. 5-6). The nurse, John Doe #1, told him that Health Care had received a call concerning his prescription refill. (Doc. 1, pp. 6, 8). The nurse also told Plaintiff that his file indicated that his refill was due, that he had left a note with the pharmacy informing them, and that the note he left in the pharmacy would get him his medication. *Id.* Plaintiff did not receive treatment at that time, even though his skin was "plaqueing," inflamed, cracking, and had open sores, and he informed John Doe #1 that it was "painful and itched badly." *Id.*

On December 5, 2016, Plaintiff had not yet received his medication or any other treatment, and his skin condition was "really bad." (Doc. 1, p. 6). Plaintiff "had over 40 skin spots that ranged in sizes from ½ in. to 8 in., they were painful to the touch, cracking, and bleeding in many spots, leading to a real health and sanitation concern about the possible risk of infection, and at 15 days without treatment the itching was maddening." *Id.* Plaintiff filed an emergency grievance listing his concerns and inquiring about his medication. *Id.* Jane Doe #2, the Wexford Health Care Coordinator, continued to delay and deny Plaintiff's prescribed medication and ignore Plaintiff's request for medical treatment when Plaintiff filed his emergency grievance. (Doc. 1, p. 9). After 48 hours, on December 7, 2016, Plaintiff filed a non-emergency grievance with the same information. (Doc. 1, p. 6). Plaintiff received a response to that on December 12,

2016 indicating that it was a duplicate grievance and telling him to wait for a response to his first grievance. *Id.* On December 15, 2016, Plaintiff saw P.A. Gerst (John Doe #2) during a scheduled clinic. *Id.* Plaintiff told him about his prescription issues, and Gerst responded by showing him that his prescription was current. *Id.* Gerst brought this issue to the attention of the nurse, Jane Doe #3, but she "failed to carry out medical orders." (Doc. 1, pp. 6, 9). Gerst then renewed Plaintiff's medication for five months. (Doc. 1, p. 6). Gerst did not provide Plaintiff with treatment despite the fact that Plaintiff's "skin had obviously open sores all over it" posing a risk of infection, and Plaintiff was "in obvious discomfort and pain." (Doc. 1, pp. 6, 9).

On December 16, 2016, Plaintiff sent a copy of his grievance issues to John Howard in the mail. (Doc. 1, p. 6). He also sent an inmate request slip to the director of the institution requesting to speak with an inspector from outside the institution. *Id.* Plaintiff received no response. *Id.* On December 19, 2016, Plaintiff declared a medical emergency because a "really bad" psoriasis skin sore, covering a four-inch by six-inch area of his lower left shin, was causing him a lot of pain. *Id.* It was swollen, inflamed, and hot to the touch. *Id.* Plaintiff thought it was infected. *Id.* After arguing with the nurse, John Doe #1, about whether an infection constituted a medical emergency, and being threatened with a ticket, Plaintiff was allowed to see Dr. Larson. (Doc. 1, pp. 6, 9). After examining Plaintiff's leg and other psoriasis affected areas, Larson told Plaintiff he had a bacterial skin infection in his left leg. (Doc. 1, pp. 6-7). He prescribed Plaintiff an

5

antibiotic for the infection, as well as five days' worth of Benadryl, hydrocortisone cream, and miconsole nitrate. (Doc. 1, p. 7). Larson also directed the nurses to call the pharmacy supplier to remedy Plaintiff's Betamethasone issue. *Id.*

On December 22, 2016, Plaintiff received his full prescription. *Id.* On January 11, 2017, after not receiving a response to his December 5, 2016 emergency grievance, Plaintiff filed another grievance. *Id.* This grievance was returned for being a duplicate of the December 5, 2016 grievance. *Id.* On January 30, 2017, Plaintiff received his original grievance back. *Id.* It was marked as not an emergency and signed by Chief Administrative Officer J.C. Garnett. *Id.* The counselor marked it received on January 1, 2017 and signed on January 30, 2017. *Id.* The response to the grievance read:

> The offenders medical jacket was reviewed and the pharmacy was consulted. The offender did not turn the sticker in to receive the refill. The offender notified staff on 11-29-2016 per documentation. The pharmacy was contacted and the technician stated she sent it back as 'too soon' as she looked at the order as 45 Gms/mo. The issue was corrected and the offender is now receiving 135 Gms/mo. He last received the medication on 12-21-2016.

*Id.* On February 25, 2017, Plaintiff sent his original grievance to the grievance officer. *Id.* Plaintiff was transferred to Shawnee Correctional Center on March 7, 2017 without receiving a response from the grievance officer. *Id.* On March 12, 2017, Plaintiff submitted his grievance to the Administrative Review Board ("ARB"). *Id.* Plaintiff received a response from the ARB dated April 10, 2017, stating they checked with Big Muddy's grievance office but that the office claims to have never received his grievance. *Id.*

Plaintiff claims that "each defendant's actions caused [him] to suffer extended periods of pain and irritation due to their negligence and deliberate indifference to [his] issues or [his] requests for relief."  (Doc. 1, p. 8).  Plaintiff requests monetary damages.  (Doc. 1, p. 10).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 5 counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** From November 20, 2016 to November 29, 2016, Jane Doe #1 showed deliberate indifference to Plaintiff's serious medical need involving his psoriasis by failing to provide Plaintiff with his prescribed medication in violation of the Eighth Amendment.
>
> **Count 2 –** From November 22, 2016 through December 5, 2016, Jane Doe #2 showed deliberate indifference to Plaintiff's serious medical need involving his psoriasis by deliberately ignoring Plaintiff's request slips and emergency grievance regarding his prescribed medications, his discomfort, and the risk of harm he faced from open sores, in violation of the Eighth Amendment.
>
> **Count 3 –** On November 29, 2016 and December 19, 2016, John Doe #1 showed deliberate indifference to Plaintiff's serious medical need involving his psoriasis by failing to provide Plaintiff with medical treatment and delaying and denying him access to appropriate medical treatment, in violation of the Eighth Amendment.
>
> **Count 4 –** On December 15, 2016, P.A. Gerst (John Doe #2) showed deliberate indifference to Plaintiff's serious medical need involving his psoriasis by failing to provide Plaintiff with

>medical treatment in violation of the Eighth Amendment.

**Count 5 –** On December 15, 2016, Jane Doe #3 showed deliberate indifference to Plaintiff's serious medical need involving his psoriasis by failing to carry out medical orders in violation of the Eighth Amendment.

As discussed in more detail below, Counts 1 through 4 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297).

Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing. *See Farmer*, 511 U.S. at 835.

Plaintiff has described a condition, psoriasis, that as described meets at least a few of the criteria outlined in *Gutierrez*. Plaintiff's condition significantly worsened and caused him pain when it went untreated. It would also likely be considered noteworthy by a reasonable doctor or patient. Plaintiff's allegations therefore suffice to meet the objective showing that Plaintiff had a serious medical condition. Plaintiff also alleges that John Doe #1, Gerst (John Doe #2), and Jane Does #1 and #2 deliberately deprived him of his medication, deliberately failed to treat him, or deliberately neglected to ensure he received the appropriate treatment after having been alerted to his issues. Because of this, his suffering continued, and his leg ultimately became infected. Thus, at this early stage, Count 1 against Jane Doe #1, Count 2 against Jane Doe #2, Count 3 against John Doe #1, and Count 4 against P.A. Gerst (John Doe #2) cannot be dismissed and will proceed past threshold.

Plaintiff fails to provide any sort of factual basis to support a finding that Jane Doe #3 showed deliberate indifference to his medical needs. Instead, he merely states that Gerst brought the fact that Plaintiff's prescription was current, and that he had last received 45 GMs on November 10, 2016, to her attention. Per his allegations, Plaintiff was under Gerst's care at the time, not necessarily Jane Doe #3's. Further, Plaintiff fails to allege any actual "medical orders" Jane

Doe #3 failed to carry out.  Without more, Plaintiff has failed to state a claim upon which relief can be granted against Jane Doe #3, so Count 5 will be dismissed without prejudice.

### Wexford Health Sources

A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff has not alleged that any of the individual defendants either acted or failed to act as a result of an official policy espoused by Wexford.

Plaintiff has also failed to include specific allegations against Wexford in the body of his Complaint, despite his having listed it among the defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  And in the case of those defendants in supervisory positions, the

doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

For these reasons, Wexford shall be dismissed from this action without prejudice.

### **Identification of Unknown Defendants**

Plaintiff shall be allowed to proceed with Counts 1, 2, and 3 against Jane Does #1 and #2 and John Doe #1. However, these defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the Warden of Big Muddy River Correctional Center will be added as a defendant, in his or her official capacity only, and shall be responsible for responding to discovery (formal or otherwise) aimed at identifying these Doe defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of these defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

Further, though Plaintiff refers to Physician's Assistant Gerst as John Doe #2 throughout his Complaint and in the case caption and list of defendants, he

11

also identifies him with particularity by including his name next to the Doe designation. Because the Court finds that Gerst has been sufficiently identified, and to facilitate the orderly progress of this action going forward with respect to the other Doe defendants, the Clerk will be directed to rename the Doe defendants in CM-ECF as follows: Jane Doe #1 (Wexford Pharmacy Technician); Jane Doe #2 (Wexford Health Care Coordinator); Jane Doe #3 (Wexford Nurse); John Doe #1 (Wexford Nurse); and P.A. Gerst. *See* Fed. R. Civ. P. 21 ("the court may at any time, on just terms, add or drop a party").

## Pending Motions

Plaintiff has filed a Motion to Appoint Counsel (Doc. 3) and an Amended Motion for Recruitment of Counsel (Doc. 14), which are hereby **REFERRED** to a United States Magistrate Judge for a decision.

## Disposition

The **CLERK** is **DIRECTED** to replace the **JANE DOE** (1-2) and **JOHN DOE** (1-3) defendants in CM-ECF with the following separate defendants: **JANE DOE #1** (Wexford Pharmacy Technician); **JANE DOE #2** (Wexford Health Care Coordinator); **JANE DOE #3** (Wexford Nurse); **JOHN DOE #1** (Wexford Nurse); and **P.A. GERST**.

**IT IS HEREBY ORDERED** that **COUNT 1** will **PROCEED** against **JANE DOE #1**.

**IT IS FURTHER ORDERED** that **COUNT 2** will **PROCEED** against **JANE DOE #2**.

**IT IS FURTHER ORDERED** that **COUNT 3** will **PROCEED** against **JOHN**

**DOE #1**.

IT IS FURTHER ORDERED that **COUNT 4** will **PROCEED** against **P.A. GERST**.

IT IS FURTHER ORDERED that **COUNT 5** is **DISMISSED** without prejudice.

IT IS FURTHER ORDERED that **JANE DOE #3** and **WEXFORD HEALTH SOURCES** are **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

The **CLERK** is **DIRECTED** to **ADD** the **WARDEN OF BIG MUDDY RIVER CORRECTIONAL CENTER** (official capacity only) as a defendant to this lawsuit, for the sole purpose of responding to discovery requests aimed at identifying the remaining Doe defendants.

IT IS FURTHER ORDERED that as to **COUNTS 1** through **4**, the Clerk of Court shall prepare for **JANE DOE #1** (once identified), **JANE DOE #2** (once identified), **JOHN DOE #1** (once identified), **P.A. GERST**, and **WARDEN OF BIG MUDDY RIVER CORRECTIONAL CENTER** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants Jane Doe #1, Jane Doe #2, and John Doe #1 until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to*

*such a referral.* If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.09.21
17:18:49 -05'00'

**United States District Judge**